1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                        DISTRICT OF ARIZONA

8   HIP Lending Group, LLC, an Arizona          No:
    limited liability company,
9
                    Plaintiff,
10                                               **ORDER GRANTING MOTION**
            v.                                   **FOR THE APPOINTMENT OF**
11                                               **RECEIVER**
    Goalz Restaurant Group, LLC, a Wyoming
12  limited liability company; Goalz CD Pooler
    GA, LLC, a Wyoming limited liability
13  company; Goalz Dairy Denver NC, LLC,
    formerly known as Goalz DQ Denver NC,
14  LLC, a Wyoming limited liability company;
    Goalz Dairy Ft Pierce FL, LLC, a Florida
15  limited liability company; Goalz DH Springs
    CO, LLC, a Wyoming limited liability
16  company; Goalz DH Georgetown KY 111,
    LLC, a Wyoming limited liability company;
17  Goalz DH IL 107, LLC, an Illinois limited
    liability company; Goalz DH IL 109, LLC,
18  an Illinois limited liability company; Goalz
    DH Slidell LA 112, LLC, a Wyoming
19  limited liability company; Goalz Restaurant
    Group COWY, LLC, a Wyoming limited
20  liability company; Goalz Restaurant Group
    FLA, LLC, a Wyoming limited liability
21  company; Goalz Restaurant Group KTY,
    LLC, a Wyoming limited liability company;
22  Goalz Restaurant Group NCSC, LLC, a
    Wyoming limited liability company; and
23  Shawn Eby, a Wyoming resident,

24                   Defendants.

25

26          The Court has reviewed and considered:  (1) Plaintiff's Verified Complaint; (2) the

27  Motion for the Appointment of Receiver; (3) Craig Hannay's Declaration in Support of

28  Plaintiff's Motion for the Appointment of Receiver; (4) the evidence presented; and (5) all

other matters of record.  The Court hereby makes the following findings of fact:

A.    This Court has jurisdiction under 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the adverse parties are of diverse citizenship.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

B.    Beginning in September 2019, the parties entered into a loan agreement and two subsequent amendments to the loan agreement (the "Loan Documents") wherein Plaintiff agreed to, and did, loan $3,000,000.00 to Defendants.  In connection with the foregoing Loan Documents, Defendants granted a security interest in the following assets whether then owned or subsequently acquired or created:

> All Accounts, Chattel Paper, Goods (including all Inventory, Equipment and Fixtures), Documents, Instruments, General Intangibles (including Payment Intangibles), Investment Property, Letter-of-Credit Rights, Supporting Obligations, Commercial Tort Claims, Other Property, and Borrower's limited liability membership interests in its Subsidiaries; all Proceeds and products of all of the foregoing (including Proceeds of any insurance policies and claims against third parties for loss or any destruction of any of the foregoing); and all Records relating to any of the foregoing.

(the foregoing assets are collectively referred to as the "Collateral").  *See* Section 5.1 of the Loan Documents.  Plaintiff perfected its security interest in the Collateral by filing UCC-1 Financing Statements in the respective states.

C.    In addition to Defendants, Goalz Restaurant Group, LLC ("GRG") directly holds majority membership interests in the following entities:

a.    DH Cheyenne WY, LLC

b.    CD Lincolnton NC, LLC

c.    CD Lancaster SC, LLC

d.    CD Shelbyville KY, LLC

e.    Dairy Commerce City CO, LLC

f.    Dairy Fed Highway FL, LLC

g.    Dairy Traditions FL, LLC

D.     Through its wholly owned holding company Goalz Restaurant Group COWY, LLC, GRG holds majority membership interests in CC Cheyenne WY, LLC.

E.     Through its wholly owned holding company Goalz Restaurant Group FLA, LLC, GRG holds majority membership interests in CC Apopka FL, LLC and CC Melbourne FL, LLC.

F.     Through its wholly owned holding company Goalz Restaurant Group KTY, LLC, GRG utilizes the trade name CC Dixie Highway.

G.     Through its wholly owned holding company Goalz Restaurant Group NCSC LLC, GRG utilizes the trade name CC Huntsville AL and holds majority membership interests in::

    a.     CC Huntsville AL, LLC

    b.     CC Lincolnton NC, LLC

    c.     CC Lancaster SC, LLC

(collectively, the non-defendant entities in Paragraphs C–G are referred to as the "Subsidiary LLCs").

H.     The Subsidiary LLCs guaranteed the obligations under the Loan Documents and agreed that each is "jointly and severally liable for, and absolutely and unconditionally guarantees to Lender the prompt payment and performance of, all Obligations." *See* Section 12.1. of the Loan Documents.

I.     The Second Amended Loan Agreement was to be repaid through thirty-six (36) monthly payments of accrued interest and principal beginning on January 1, 2020. Each monthly payment was due on the first of each month until paid in full. The entire principal balance of the loan was due with all interest, fees, and other charges on January 1, 2023, if not otherwise accelerated.

J.     Despite Plaintiff's loans to Defendants, Defendants have struggled to make payroll without additional advances from Plaintiff.

K.     In August 2019, GRG caused CC Huntsville AL, LLC to cease operations and close down the Church's Chicken that it had been operating without notice or consent of

the franchisor.  GRG was able to avoid a complete termination of the franchise agreement by entering into a promissory note in the amount of $283,093.00 for the damages suffered by the franchisor.  The note provides that any default thereunder is a default upon all franchise agreements with the franchisor.  In March 2020, GRG and Goalz Restaurant Group NCSC, LLC failed to make the requisite payments and a notice of default was sent.

L.     On March 5, 2020, in addition to the financial defaults, Defendants received two notices of default for failure to abide by the operational terms of the franchise agreement with Church's Chicken.  These violations threaten the franchise agreements for all Defendants who operate under the Church's Chicken brand.

M.     As of February 2020, Defendants had outstanding payables (not including payments to Plaintiff) in excess of $1,000,000.00.

N.     Additionally, Defendants have received notices of default from landlords of various stores with the threat of lockouts being instituted if payment is not received.

O.     Defendants have also failed to make payment to Plaintiff as required under the Second Amended Loan Agreement.

P.     On March 2, 2020, Plaintiff delivered a notice of default and opportunity to cure to Defendants.  Defendants had five days to cure the defaults set forth therein or an event of default will have been deemed to occur.  Upon an event of default, Plaintiff is entitled to exercise a variety of remedies, including acceleration, imposition of default interest rate, and foreclosure.

Q.     Defendants also agreed that Plaintiff "may, in its discretion, petition for and obtain the appointment of a receiver to take possession of any or all of the Collateral and to operate any Obligor's business and to exercise such rights and powers as the court appointing such receiver shall confer upon such receiver . . . ." *See* Section 9.2 of the Second Amended Loan Agreement.

R.     Despite the notice and opportunity to cure, Defendants failed to cure, or make any arrangements to cure, the defaults under the Second Amended Loan Agreement.  On

March 10, 2020, Plaintiff delivered its notice of acceleration and demand for payment of the amounts due under the Second Amended Loan Agreement.

S.      As of March 9, 2020, Defendants were obligated to Plaintiff in the amount of $3,377,869.48, which represents outstanding principal and accrued interest.  Given the deteriorating nature of Defendants' financial situation, the threatened termination of the franchise agreements, and potential lockouts by landlords, a receiver is necessary to protect Plaintiff's collateral from further deterioration.  Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED granting the Motion in its entirety.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED as follows:

1.      **Appointment of Receiver**.  GlassRatner Advisory & Capital Group, LLC, by and through Bill Hughes (the "Receiver"), is appointed Receiver over the Collateral and Subsidiary LLCs (the "Receivership Estate"). The Court finds that the Receiver possesses the necessary qualifications to act as receiver for the Receivership Estate.

2.      **Bond and Oath.**  The Receiver's appointment is effective upon the Receiver filing a bond with the Clerk of the Court in the amount of $10,000.00 and taking the oath required by law.  The cost of the bond will be reimbursed to Receiver by the Receivership Estate.  Receiver may at any time file a motion requesting that the bond be exonerated, or that it be discharged or released from its appointment as receiver, and all of its responsibilities attendant thereto.

3.      **Powers and Duties.**  Receiver shall have exclusive possession and control over the Receivership Estate with the power and authority to take possession, preserve, protect, operate, manage, market, sell and transfer the Receivership Estate and/or any parts or portions thereof.  After consultation with and written consent of Plaintiff, Receiver shall have other powers, rights and duties of receivers appointed under federal law including, without limitation, the following rights, powers and duties:

A.      **Collection of Proceeds.**  Receiver shall have the power to take all steps necessary to collect the Proceeds from the Receivership Estate and deposit said sums into one or more accounts ("Bank Account") at a federally insured bank.  Receiver shall

have the power to present for payment any checks, money orders, and other forms of payment made payable to Defendants or Subsidiary LLCs, any property manager, any affiliates of any of them, or such similar names, which constitute or are derived from the Proceeds of the Receivership Estate, endorse same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein. Receiver shall have the sole and exclusive authority to disburse funds from the Bank Account. Receiver shall have authority to take possession of bank and other deposit accounts of Defendants or Subsidiary LLCs, any property manager or any affiliates of any of them related to the Receivership Estate, including such accounts that may not be in Defendants' or Subsidiary LLCs' name, or that may be in the name of one or more management companies, and to open, transfer and change all bank and trade accounts relating to the Receivership Estate, so that all such accounts are in the name of the Receiver.

B.     **Possession of Receivership Estate.** Receiver shall have the exclusive right to take and keep possession of the Receivership Estate, including, without limitation, all bank accounts, security deposits and deposit accounts during the pendency of the receivership and/or the above-captioned action. Receiver is authorized to engage a lock smith or similar professional for the purposes of gaining access and taking possession of any asset of the Receivership Estate.

C.     **Management of Receivership Estate.** Receiver shall manage and operate the Receivership Estate on a daily basis in a manner consistent with this Order. Receiver shall have the power and authority to enforce agreements and enter into new agreements and contracts relating to the Receivership Estate. Receiver shall manage, operate and maintain the Receivership Estate subject to such rules and conditions as Receiver may establish to ensure that Profits are profitably preserved and used, and to reasonably ensure that the value of the Receivership Estate is not materially diminished. Receiver shall make the following daily operating decisions regarding the Receivership Estate, including, without limitation:

1           1)     Hire outside advisors for the Receivership Estate to conduct the operations of the Receivership Estate as directed by Receiver, and terminating the employment of existing advisors, officers, or employees of the Receivership Estate, in its discretion;

2)     Providing maintenance, repair and improvement services for the Receivership Estate and extraordinary maintenance or repair services where deemed appropriate in connection with emergency conditions; provided, however, that Receiver shall not contract for extraordinary maintenance or repair services costing $5,000 or more without the written consent of Plaintiff or approval of the Court;

3)     Terminating or continuing in effect in Receiver's business judgment any contracts or leases presently existing relating to the Receivership Estate;

4)     Entering into or modifying contracts affecting any part or all of the Receivership Estate, including, without limitation, any leases affecting the Receivership Estate, so long as, for all contracts costing or having a value of more than $10,000 annually, or for any leases or contracts having a term of more than 30 days, Receiver first obtains the written consent of Plaintiff or approval of the Court; and

5)     Procuring goods and services for the Receivership Estate.

D.    **Sale or Liquidation**.  After consultation with Plaintiff, the Receiver may hire brokers for the Receivership Estate as the Receiver deems appropriate to assist with listing and marketing the Receivership Estate for sale. Receiver, with consultation of Plaintiff and with Court approval, may sell the Receivership Estate, in part or in whole, free and clear of liens, claims, encumbrances and interests.  If Receiver, after consultation with Plaintiff, decides to proceed with a sale of some or all of the Receivership Estate, Receiver or Plaintiff shall file a Motion to Approve a sale and any party shall have 10 business days to file an objection with this Court.  If no timely objection is filed, then the Motion shall be

deemed granted and the Court shall approve the sale.  If a timely objection is received, the Court shall promptly set a hearing on the Motion and Objection.

E.    **Payment of Expenses**.  To the extent reasonably possible given the income generated by the Receivership Estate, Receiver shall pay the current operating expenses of the Receivership Estate in the ordinary course of business; provided, however, that Receiver shall not pay operating expenses or other payables relating to periods prior to Receiver's appointment as Receiver unless, in Receiver's discretion, the same is necessary or desirable for the current and future operation and management of the Receivership Estate after consultation with Plaintiff.  Receiver shall also disburse funds from the Bank Account to pay all amounts necessary to maintain adequate all risk hazard property damage and all risk comprehensive liability insurance on the Receivership Estate, to the extent necessary to ensure the Receivership Estate is insured (nothing herein shall be deemed to absolve Defendants of their obligations under the Loan Documents in place between Plaintiff and Defendants).  Subject to the provisions of this Order, payment of payroll, payroll taxes, employee benefits, leasing company fees, property management company fees, as applicable, utilities, insurance, taxes, landscaping, janitorial services, and maintenance and other ordinary course expenses shall not require prior approval of the Court.

F.    **Accounting Records**.  Defendants shall cause to be provided, on reasonable notice and during normal operating hours, and Receiver shall expeditiously review and inspect the accounting records with respect to the Receivership Estate, and shall take such steps as it deems necessary to assure that all Profits collected and all the disbursements made in connection with the Receivership Estate by the Receiver are properly accounted for in accordance with generally accepted accounting principles.

G.    **No Obligation to Complete Tax Returns.**  Notwithstanding any other provision hereof, Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants or Subsidiary LLCs for income or other taxes.  While acting as receiver, Receiver shall comply with applicable laws and regulations relating to the collection of taxes.  Receiver shall allow Defendants or Subsidiary LLCs with such access

to books and records within Receiver's custody or control as may be necessary in order for Defendants or Subsidiary LLCs to complete and file tax returns on their own behalf.

H.   **No Appraisal Required.**   Receiver is excused from seeking an independent professional appraisal of the Receivership Estate, but Receiver is authorized to commission appraisals at Receiver's discretion.

I.   **Standard of Care.**  Receiver shall at all times exercise reasonable care in employing its business judgment to administer the Receivership Estate.

J.   **Licenses and Permits.**   Receiver may acquire or renew all governmental licenses, permits, or other authorizations, including any liquor license, either in Receiver's name or in the name of Defendants or Subsidiary LLCs, pertaining to the Receivership Estate or any business associated therewith and do all other things necessary or appropriate to maintain and protect the Receivership Estate.

K.   **Budget and Actual-to-Budget Comparison Reports**.  The Receiver shall be permitted to use Advances and Proceeds only as set forth in and pursuant to a Budget and this Order.  All Advances and Proceeds shall be deposited into the Bank Accounts as set forth above, which shall be disbursed by Receiver pursuant to the express items in the Budget.  Receiver shall prepare and submit to Plaintiff a detailed budget acceptable to Plaintiff ("Budget") that sets forth all projected receipts together with a weekly forecast of other revenues and expenses and available cash.  On a weekly basis Receiver shall prepare and submit to Plaintiff an actual-to-budget comparison report. The Budget may be amended from time to time by written agreement between the Receiver and Plaintiff.

L.   **Borrowing Authority.**   Receiver is authorized to borrow from Plaintiff, in Plaintiff's sole discretion, such amounts as may be necessary to satisfy the costs and expenses of the receivership, to pay operating expenses and other expenses, to the extent that the net Proceeds derived from the Receivership Estate are insufficient to satisfy such costs and expenses ("Advances"). All borrowings from Plaintiff shall be added to the principal as Advances under the Loan Documents between Plaintiff and Defendants and

shall be secured by the Loan Documents with the same priority as Plaintiff's existing liens encumbering the Receivership Estate. The Advances shall be repaid by Receiver to Plaintiff as collection of Proceeds allow or from the proceeds of the sale of the assets of the Receivership Estate.

4.      **Administration.**  Receiver is authorized to employ the following procedures and case administration:

A.      **Bank Accounts.**  Receiver may establish the Bank Accounts described above.

B.      **Financial Reports.**     Commencing sixty (60) days after the appointment herein, and no later than the fifteenth (15th) day of each month thereafter, Receiver shall provide the Court, the parties, and counsel to the parties with a complete report on its activities and the condition of the Receivership Estate during the preceding calendar month, including a complete accounting of Proceeds collected and the disbursements made during the preceding calendar month (the "Report").  Receiver, with consent of Plaintiff, shall not be required to file a Report if it believes such Report would contain sensitive financial information, disclosure of which will negatively impact the Receivership Estate or the Receiver's ability to sell the Receivership Estate.  If a Report is not filed with the Court, the Receiver shall file a notice of circulation with the Court and, upon request of the Court, provide the Report for *in camera* review.

C.      **Fee.**  The Receiver, including its staff professionals, shall be paid a customary fee for its work as receiver based upon its normal hourly rates.  The Receiver is authorized to make payment for its fees, its other costs, and for the fees and costs of its professionals in the ordinary course, provided, however, that any party shall have ten (10) days after the Receiver provides the Court, the parties, and counsel to the parties with the Report to object to the requested fees and costs.  The approved fees and costs of the Receiver and its professionals, including retained counsel, shall be paid from the gross receipts derived from the Receivership Estate.  If the assets are not sufficient to pay the approved Receiver's fees as presented, Plaintiff may, in its sole discretion, and without obligation to

do so,  advance funds to the Receiver sufficient to pay such approved fees and costs, which funds shall constitute Advances under the Loan Documents.

D.   **Court Approval; Procedure.**   Any motion by Receiver for Court approval or any act of Receiver requiring Court approval shall be served on each party hereto and each other person who has filed and served on Receiver a request for special notice.  Receiver may file requests for special notice on behalf of any party; however, such request filed by Receiver shall not be deemed consent to the jurisdiction of this Court.  In addition to service by mail or personal service, service may be made by facsimile or e-mail.

E.   **Notice.**   In addition to any special notice provisions contained herein, Receiver shall provide notice of all pleadings filed by Receiver herein to the parties hereto. Unless otherwise provided by the Rules of Civil Procedure, such notice may be made by mail or personal service five (5) days in advance of any hearing, by confirmed facsimile five (5) days in advance of any hearing, or as otherwise may be approved by the Court. Receiver shall be deemed to have been provided adequate notice if it complies with this section.

F.   **Further Instructions.**   Receiver may at any time, with consultation of Plaintiff, apply to this Court for further or other instructions or for modification of this Order or for further powers necessary to enable Receiver to properly perform its duties, or for termination of Receiver's appointment.

5.   **Other Parties' Obligations.**   Defendants and Subsidiary LLCs and their officers, directors, agents, representatives and employees, contractors, and subcontractors, including without limitation any property management firm, company or individuals retained by Defendants and Subsidiary LLCs and their employees, and all persons with actual or constructive knowledge of this Order and their agents and employees, shall turn over to the Receiver, within two (2) business days after presentation of this Order:

A.   The possession of the Receivership Estate, including all keys to all locks related to assets of the Receivership Estate, all bank accounts, deposit accounts, security deposits, codes, access codes, security codes, passwords, and the records, books of

account, ledgers and all business records for the Receivership Estate (including, without limitation, the plans, specifications and drawings relating to or pertaining to any part or all of the Receivership Estate), wherever located and in whatever mode maintained (including, without limitation, information contained on computers and any and all software relating thereto as well as all banking records, statements and cancelled checks);

B.     All documents that constitute or pertain to licenses, permits or governmental approvals relating to the Receivership Estate;

C.     All documents that constitute or pertain to insurance policies, whether currently in effect or lapsed, that relate to the Receivership Estate;

D.     All leases and subleases, royalty agreements, licenses, assignments or other agreements of any kind, whether currently in effect or lapsed, that relate to the Receivership Estate;

E.     All documents pertaining to past, present or future construction of any type with respect to all or part of the Receivership Estate;

F.     All documents pertaining to toxic chemicals or hazardous materials, if any, ever brought, used and/or remaining upon the Collateral, including, without limitation, all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices;

G.     All Proceeds derived from the Receivership Estate;

H.     All books, records, including payroll records and personnel files, and accounts relating to the Receivership Estate, and all other records, documents, insurance policies and instruments of whatever kind and nature which relate to the operation and control of any part of the Receivership Estate; and

I.     All financial institutions, credit card processors, insurance agents or underwriters, utility providers, vendors, suppliers, tradesmen, materialmen, service providers, franchisors, taxing agencies, and all government agencies and departments are hereby ordered to take direction from the Receiver as it relates to the accounts of Defendants

or Subsidiary LLCs and to surrender any and all funds held on deposit or apply said funds as directed by the Receiver.

6. **Utilities.**  Any utility company providing services to the Receivership Estate, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, shall be prohibited from discontinuing service to the Receivership Estate based upon unpaid bills incurred by Defendants.  Further, such utilities shall transfer any deposits held by the utility to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services.

7. **Mail.**  Receiver may issue demand upon the U. S. Postal Service that the U.S. Postal Service grant exclusive possession and control of mail, including postal boxes, as may have been used by Defendants or Subsidiary LLCs and may direct that certain mail related to the Receivership Estate and its business be re-directed to Receiver.

8. **Insurance.**  The Receiver shall determine upon taking possession of the Receivership Estate whether in the Receiver's judgment, there is sufficient insurance coverage.  With respect to any insurance coverage in existence or obtained, the Receiver, Plaintiff and the property management company, if one exists, shall be named as additional insureds on the policies for the period of the Receivership.  If sufficient insurance coverage does not exist, the Receiver shall immediately notify Plaintiff and shall have thirty (30) calendar days to procure sufficient all-risk and liability insurance on the Receivership Estate (excluding earthquake and flood insurance) provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver may seek an Advance from Plaintiff and increase the coverage.  The Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.  Defendants and Subsidiary LLCs and their property managers, employees, agents, affiliates and insurer are prohibited from cancelling, reducing, or modifying any and all insurance coverage in existence with respect to the Receivership Estate that are in effect as of the date of this Order without the consent of Receiver.

9.    **Use of Funds.**  The Receiver shall pay only those bills that are reasonable and necessary for the operation or the protection of the Receivership Estate, according to the Budget, and shall allocate funds in the following order of priority: (1) the costs and expense of the Receivership Estate including utilities, insurance premiums, general and special taxes or assessments levied on the real property and improvements thereon, receivership fees, professional fees, attorneys' fees, etc.; (2) the creation and retention by the Receiver of a reasonable working capital fund, according to the Budget; and (3) amounts due to Plaintiff.

10.    **General Provisions**

A.    **Civil Claims**.  No person or entity shall file suit against Receiver, or take other action against Receiver, without an Order of this Court permitting a suit or action to proceed; provided, however, that no prior Court Order is required to file a motion in this action to enforce the provisions of this Order or any other Order of this Court in this action.

B.    **Personal Liability to Creditors**.  Receiver and its employees, agents, accountants and attorneys shall have no personal liability in connection with any liabilities, obligations, liens or amounts owed to any of the parties and any of Defendants' creditors because of its duties as Receiver.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with federal law.

C.    **No Personal Obligation of Receiver.**  No obligation incurred by Receiver in the good faith performance of its duties in accordance with the orders of this Court, whether pursuant to any contract, by reason of any tort, or otherwise, shall be Receiver's obligation or the personal obligation of its principals or agents.  Rather, the recourse of any person or entity to whom Receiver becomes obligated in connection with the performance of its duties and responsibilities shall be solely against the Receivership Estate.  Receiver shall have no obligation to advance its own funds to any costs and expenses of the Receivership Estate and Receiver shall not be liable for any Receivership Estate or receivership obligations.  Receiver is authorized to use Defendants' or Subsidiary LLCs' taxpayer identification numbers to establish and open bank accounts, issue financial

reports, open, administer or close accounts with vendors or utilities suppliers, with respect to marketing or sale of the Receivership Estate or any loans relating thereto, and for other accounting and financial related purposes. The Receivership Estate shall indemnify and hold harmless the Receiver and its principals and agents from any claims against the Receiver which arise out of the Receiver's operation of this Receivership in a manner consistent with and within the scope of this Order, unless the Receiver has committed fraud and gross negligence in the administration of its duties.  The Receiver and its principal and agents shall not be liable for any action or omission of Plaintiff or any Defendant.

11.    **No Lender Liability and No Limit on Lender Remedies**.  Plaintiff and its present and former officers, directors, shareholders, employees and agents, subsidiaries, and their heirs, personal representatives, successors and assigns shall not be liable for: (i) any action or omission of Receiver, or (ii) defects, deficiencies, flaws, expenses, costs or other matters relating to the Receivership Estate.  Nothing in this Order shall be deemed to limit or prohibit Plaintiff from initiating and/or completing a uniform commercial code sale or other disposition of the Receivership Estate or from negotiating and completing an acceptance of collateral.

12.    **Non-Interference with Receiver.** All creditors of Defendants, all persons or entities with actual knowledge of this Order, including, without limitation, the parties to this action, and the officers, directors, members, principals, affiliates, agents, servants and employees (current or former) of Defendants or Subsidiary LLCs, are enjoined from:

(a)    Interfering with the Receiver, directly or indirectly, in the management and operation of the Receivership Estate or business operations of Defendants or Subsidiary LLCs;

(b)    Interfering with the Receiver, directly or indirectly, in the collection of revenues derived from the Receivership Estate or the business operations of Defendants or Subsidiary LLCs;

(c)    Collecting or attempting to collect from the Receivership Estate or Defendants or Subsidiary LLCs;

(d)    Extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Receivership Estate without the prior written consent of the Receiver and this Court;

(e)    Terminating any agreement with Defendants or Subsidiary LLCs without prior Court approval; and

(f)    Any act which directly or indirectly interferes in any manner with the discharge of the Receiver's duties under this Order and the operation and management of the Receivership Estate, Defendants' or Subsidiary LLCs' business.

13.    **Termination.**  The Receivership may be terminated by the Receiver or by Plaintiff as provided in this paragraph.  Immediately upon the full payoff of Plaintiff's Indebtedness secured by the Loan Documents, upon the completion of a valid foreclosure of the Receivership Estate, or upon the acquisition of the Receivership Estate by Plaintiff or any assignee in satisfaction of the indebtedness, and without further Order of this Court, the Receiver shall relinquish possession and control of the Receivership Estate to the appropriate party.  Upon relinquishing possession and control of the Receivership Estate, the Receiver shall be relieved from all further duties, liabilities and responsibilities relating to the Receivership Estate and shall thereafter submit the Receiver's final account and report for Court approval and discharge.