Ryan J. Lorenz, #019878
Jason A. Clark, #030765
**Clark Hill PLC**
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona  85254
Telephone: (480) 684-1100
Facsimile: (480) 684-1167
Email: RLorenz@ClarkHill.com
       JClark@ClarkHill.com

Attorneys for Defendants Goalz Restaurant Group, LLC; Goalz CD Pooler GA, LLC; Goalz Dairy Denver NC, LLC; Goalz Dairy Ft Pierce FL, LLC; Goalz DH Springs CO, LLC; Goalz DH Georgetown KY 111, LLC; Goalz DH IL 107, LLC; Goalz DH IL 109, LLC; Goalz DH Slidell LA 112, LLC; Goalz Restaurant Group COWY, LLC; Goalz Restaurant Group FLA, LLC; Goalz Restaurant Group KTY, LLC; Goalz Restaurant Group NCSC, LLC; Shawn Eby

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| HIP Lending Group, LLC, an Arizona limited liability company,<br><br>        Plaintiff,<br>v.<br><br>Goalz Restaurant Group, LLC, a Wyoming limited liability company; et al.<br><br>        Defendants. | No. 2:20-cv-00544-DJH<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO APPOINT RECEIVER** |

Defendants Goalz Restaurant Group, LLC; Goalz CD Pooler GA, LLC; Goalz Dairy Denver NC, LLC; Goalz Dairy Ft Pierce FL, LLC; Goalz DH Springs CO, LLC; Goalz DH Georgetown KY 111, LLC; Goalz DH IL 107, LLC; Goalz DH IL 109, LLC; Goalz DH Slidell LA 112, LLC; Goalz Restaurant Group COWY, LLC; Goalz Restaurant Group FLA, LLC; Goalz Restaurant Group KTY, LLC; Goalz Restaurant Group NCSC, LLC; and Shawn Eby, through counsel, hereby respond in opposition to Plaintiff's motion to

appoint receiver [dkt. 4]. The motion should be denied because the Plaintiff's claims are barred by the statute of frauds. See Defendants' Motion to Dismiss [dkt. 24]. As with the Plaintiff's claims, the Plaintiff's remedies, including receivership, are premised on documents it attached to its complaint (Exhibits B, D, and E) [dtk. 1-4, 1-6, 1-7] that are not signed by the Defendants.[1] The court cannot enter an order to take away the Defendants' control of their businesses on this record.

Second, the Plaintiff's invocation of that remedy is not in the best interest of the parties, which have overlapping ownership. The Plaintiff's principal is a fifteen percent (15%) owner of the Defendants. The Plaintiff cannot objectively handle the Defendants' receivership estates, or attempt to reorganize or streamline business affairs. The Plaintiff has a conflict of interest in that regard. Rather, the Plaintiff's principal is merely waging a vendetta against the Defendants' majority owner, Defendant Shawn Eby.

Third, the traditional factors for evaluating the propriety of receivership do not favor the Plaintiff. This response is supported by the attached memorandum of points and authorities, which is incorporated by reference.

Dated this 22 day of April 2020.

**CLARK HILL PLC**

By: /s/ Ryan J. Lorenz
Ryan J. Lorenz
Jason A. Clark
Attorneys for Defendants Goalz Restaurant Group, LLC; Goalz CD Pooler GA, LLC; Goalz Dairy Denver NC, LLC; Goalz Dairy Ft Pierce FL, LLC; Goalz DH Springs CO, LLC; Goalz DH Georgetown KY 111, LLC; Goalz DH IL 107, LLC; Goalz DH IL 109, LLC; Goalz DH

---

[1] The first six and a half pages of the receivership motion [dkt. 4] are copied and pasted from the complaint [dkt. 1] and cite to the same exhibits. The same is true of the declaration of Craig Hannay, appended to the motion. See Motion, Ex. 1.

>Slidell LA 112, LLC; Goalz Restaurant Group COWY, LLC; Goalz Restaurant Group FLA, LLC; Goalz Restaurant Group KTY, LLC; Goalz Restaurant Group NCSC, LLC; Shawn Eby

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This is an action to enforce a loan (of dubious enforceability) against a family of entities engaged in the restaurant business as franchisees. The various Defendants are franchisees in Wyoming, Colorado, Louisiana, South Carolina, North Carolina, Kentucky and Florida. They operate franchises for Dairy Queen, Captain D's (seafood), Church's Chicken and Dog Haus (gourmet hot dogs) (collectively, "Franchisors").

Plaintiff HIP Lending Group, LLC ("HIP") is owned by R. Craig Hannay, through the Hannay Family Trust and HIPCO Office Investments, LLC. HIP's manager is Hannay Investment Properties, Inc. Hannay is also a fifteen percent owner of all of the Defendants through his entity RCH Goalz Holdins LLC. See Complaint, Exhibit A [dkt. 1-3].



To further complicate matters, Craig Hannay is also the ground lease landlord for two of the Defendants in Lincolnton, North Carolina. Not coincidentally and for all of Hannay's complaining about the Defendants' financial mismanagement, Hannay has made sure that those leases are paid current, while the Defendants' other landlords have been patiently waiting on rent. Hannay also owns an accounting firm which is the sole vendor of accounting and bookkeeping services for the Defendants. Hannay controls the financial

statements, company valuations, and largely the prioritization of accounts payable. Hannay has made sure that any trade creditor of the Defendants or any other lender of the Defendants, for which Hannay has executed a personal guaranty, is paid first. This includes North State Bank, the Defendants' furnishings, fixtures and equipment ("FF&E") lender, a fairly large creditor. So why is Hannay, through HIP suing a family of companies in which he is so completely immersed?

The loan transactions (if they happened and were signed) allegedly occurred on September 4, 2018 [dkt. 1-4]; March 14, 2019 [dkt. 1-6]; and April 29, 2019 [dkt. 1-7]. This was done for Hannay to improve his investment position vis-à-vis the Defendants he co-owns (15%) with Defendant Eby (55%) and a third owner, Corey Hupp (30%). As a creditor, Hannay would be and is in a superior position to get his investment back than he is as a mere equity holder.

In late 2019 and early 2020, Messrs. Hupp and Hannay determined to put the Defendants into bankruptcy. However, they lack a majority of ownership in the Defendants to do that under every operating agreement of every entity. So why is Hannay suing? The answer is simple: control. Hannay is using his creditor position of HIP to put a receiver in charge, so the receiver can then carry out Hannay's and Hupp's thoughtless and unplanned bankruptcy.

Hannay does not care about Hupp and Defendant Eby. Hannay does not care about growing the Defendants' business, of which he is a part. Rather, Hannay is trying to torpedo the Defendants. Strangely, Hannay did not sue and join to this action two other guarantors, Mr. Hupp and Steve Piascik. This is because Shawn Eby is the target.

HIP conveniently forgets and intentionally does not tell the court of the Defendants' value. In 2019, HIP put a dollar figure on the value of each of the Defendants. A spreadsheet of these values is attached as Exhibit 1. All totaled, the parties to this lawsuit valued the Defendants at $9.2 million. This was prepared by Hannay—not Eby and not

Hupp. Because Hannay's accounting firm is the exclusive provider of financial services to the Defendants, it also prepares balance sheets. The March 2019 balance sheet reflected owners' equity of $3,097,474. A copy of that balance sheet is attached as Exhibit 2. Again, this is the Plaintiff talking—not the Defendants.

Contemporaneously with this response, the Defendants filed their answer and counterclaims [dkt. 25]. In their counterclaims, the Defendants allege that the Plaintiff is seeking enforcement of the loans in bad faith and that such enforcement constitutes a knowing and intentional effort to destroy the Defendants' franchise relationships with the Franchisors. Meanwhile, the Plaintiff's principal has enriched himself as exclusive accounting firm and bookkeeper, controller of payables, preferred landlord on two properties, and structured Mr. Hannay's investment as debt instead of equity.

## II.     ARGUMENT AND ANALYSIS

### A.     Procedurally, the Motion is Not Ripe.

The Defendants moved to dismiss the Plaintiff's complaint. There is no pleading upon which the court can rely to frame the issues in this case unless the sufficiency of that pleading is first determined. The court should defer ruling on the receivership motion until the court determined whether the Plaintiff even has viable claims.

### B.     Substantively, the Motion is without Merit.

The Plaintiff correctly identifies controlling authorities for federal court receiverships. Appointment of a receiver is a matter within the sound discretion of the trial judge. *SEC v. Wallenbrock*, 313 F.3d 532, 536 (9th Cir.2002). In deciding a receivership motion, "[t]he court exercises this power to achieve a fair and just outcome." *S.E.C. v. Hardy*, 803 F.2d 1034, 1041 (9th Cir. 1986). "A receiver is an extraordinary equitable remedy that is only justified in extreme situations." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). "The appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution

5

and granted only in cases of clear necessity to protect plaintiff's interests in the property." *Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009).

"[F]actors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm. *Id.* citing *Consolidated Rail Corp. v. Fore River Ry.*, 861 F.2d 322, 326–27 (1st Cir.1988); *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir.1959); *Bookout v. Atlas Fin. Corp.*, 395 F.Supp. 1338, 1342 (N.D.Ga.1974), aff'd, 514 F.2d 757 (5th Cir.1975). Accord, *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009).

  1. Valid Claim

Here, the validity of the Plaintiff's claim is in doubt. See motion to dismiss [dkt. 24]. In addition, this case is really about a business divorce or business destruction. Mr. Hannay, the Plaintiff's principal, cannot gain control of the Defendants through his minority (15%) share. He seeks to destroy the business, carve it up into pieces, put hard-working people out of work permanently, and enrich himself by selling the scraps. He also seeks to intentionally destroy Defendant Eby. Why else would the Plaintiff not sue the other guarantors, including Mr. Hupp? The Plaintiff's claim is subject to the offsetting concerns and claims raised in the Defendants' counterclaims.

The Plaintiff claims a garden variety security interest in the Defendants and their assets. However, the Plaintiff makes no record as to whether it occupies a priority on any particular item of collateral. As noted above, the Defendants have an FF&E lender, who is secured on its furnishings, fixtures and equipment. Does the Plaintiff have a senior lien? A junior lien? How does the Plaintiff propose to deal with any senior liens?

The Plaintiff also cannot claim that its collateral is dissipating under current conditions. Sure, the coronavirus pandemic and state and local orders for business shutdowns have crushed the Defendants and the entire restaurant, sporting, hospitality and dozens of other sectors of the American economy, but the collateral is as relatively valuable as before. The Plaintiff itself valued its collateral at several million dollars above its $3 million debt. See Exhibits 1 and 2.

### 2. *Probability of Fraudulent Conduct and Property Value Protection*

Here, the Plaintiff's allegations are pretty thin. The Plaintiff claims that Defendant Eby is still collecting his bargained-for management compensation, that the Defendants are behind on rent and utilities, and Defendant Eby paid a marketing director, who happens to be his wife, her salary.

These are not frauds. These are payment of expenses and juggling payables. As noted above, the Plaintiff makes no mention of the fact that the Defendants are enslaved to using the Plaintiff's principal's accounting firm. The Plaintiff makes no mention that the Plaintiff's principal's ground leases are getting paid current. The Plaintiff makes no mention at all that Mr. Hannay, the true plaintiff, is a part owner of the Defendants. Why? Because Mr. Hannay did not want the court to know he has other preferred creditor positions.

The Defendants challenge the Plaintiff to state, by way or reply or other evidence, the rate of restaurateur rent default in April 2020, and the rate of restaurateur delinquency on utilities, insurance, payroll, taxes, and trade credit. The Defendants are no different and are not immune. The facts are:

- Two out of three restaurant employees have lost their jobs.
- Eight million restaurant employees have been laid off.
- By year end, the restaurant industry is projected to lose $240 billion.

- By the end of April 2020, the restaurant industry will have lost $80 billion n sales in March and April alone.
- Sixty-one percent (61%) of restaurant operators believe federal relief will not prevent more layoffs.
- A staggering four in ten restaurants are closed.

See National Restaurant Association, "Restaurant Industry Impact Survey", April 20, 2020 (https://restaurant.org/Downloads/PDFs/business/COVID19-Infographic-Impact-Survey.pdf) last accessed, April 22, 2020.

In spite of all this, Mr. Hannay thinks there is something fishy going on at Captain D's; there is "goose egg" revenue at Church's Chicken; there is a revenue freeze at Dairy Queen; operations are in the doghouse at Dog Haus, and this is all somehow Defendant Eby's fault. There is no fraud here, just a global pandemic. Whatever value the Defendants have lost is not discretely caused by mismanagement. It is an industry and macro-economic phenomenon.

### 3. Inadequacy of Legal Remedies and Availability of Other Remedies

Mr. Hannay cannot convince a court to dissolve the Defendants and has no standing to do so. That is why he does not bother to mention he is a part owner of the Defendants. Internal disputes are controlled by operating agreements. But Mr. Hannay does not like what those agreements say. So he has invoked his lender remedies through the Plaintiff. That is how he is trying to get control when his legal remedies are limited at the company level. Remembering that this whole case is premised on a management dispute, the motivations become clear.

If the Plaintiff is correct that it has all of this collateral and needs to get control of it, the value is whatever the market will bear. Whether a receiver is appointed has no impact on collateral values, as noted above. Thus, the Plaintiff has not demonstrated that the Plaintiff's legal remedies are insufficient. The Plaintiff has not invoked any other remedies

other than seeking a money judgment to present its claims. Given the fact that the Plaintiff itself valued the Defendants at over $9 million, the Plaintiff is fully secured.

    4. *Balancing of Harm and Good*

The Plaintiff proposed that the court appoint Bill Hughes as receiver. The Plaintiff proposed a sixteen-page form of order.

First, Mr. Hughes' qualifications stated are not a complete curriculum vitae. The terms of his engagement, an affidavit of willingness and availability, any discrete franchise knowledge, a financial surety or bond, available insurance coverage, his ability to travel (especially now), the scope and demands of the far-flung franchise enterprise of the Defendants, and many other issues are missing from the discussion. Mr. Hughes has not undertaken—though he has access through Mr. Hannay—any preliminary examination of the books and records of the Defendants. On this record, Mr. Hughes does not even know what he does not know.

Second, the form of order is so comprehensive and detailed that it grants plenary legal, financial, and managerial authority to the receiver. There is also no accountability if the receiver fails. This is because the receiver will fail. The receiver will substantively cost the Defendants more money they do not have, displace lower-paid workers so that the receiver can enjoy preferential financial treatment, and ultimately, just as Messrs. Hannay and Hupp planned, put the Defendants into bankruptcy. How can this do more good than harm? How can adding a layer of management, and professionals the receiver would hire perform better than current management? There is no evidence that the receiver would. The Plaintiff needs to meet the burden of proving that, on balance, the Defendants and, therefore, the Plaintiff, would be better off.

The Defendant may be headed over a cliff, like most restaurants these days. The last thing they need is someone who has never set foot behind the counter in a franchise telling

9

them how to run things. They have enough problems without putting too many cooks in the kitchen, with only money to pay the ones that actually cook.

## III. CONCLUSION

A fair examination of the factors and applying them to the facts established of record here, the court should deny the receivership motion. But if the court is unsure, this court already recognized in its initial order denying the motion to expedite consideration [dkt. 14]:

> [T]he Court "must base its decision to appoint a receiver on 'the moving papers and such answers, affidavits in apposition, or counter-affidavits as may be offered, and also on the testimony of witnesses in open court if the court deems such a hearing advisable.'" *Sterling Sav. Bank* [*v. Citadel Dev. Co., Inc.*], 656 F. Supp. 2d at 1259-60 [(D. Or. 2009)](quoting *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 242 (5th Cir. 1997)). Moreover, "regardless of whether it conducts a full evidentiary hearing on the matter, the [C]ourt is generally required to provide notice sufficient to allow the defendant an opportunity to present evidence." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1260.

Order, dated March 23, 2020 [dkt. 14]. The court should follow this initial inclination if it is in doubt and set this matter for an evidentiary hearing. However, based on the foregoing analysis, the motion should be summarily denied.

Dated this 22 day of April 2020.

                        **CLARK HILL PLC**

                        By: /s/ Ryan J. Lorenz
                        Ryan J. Lorenz
                        Jason A. Clark
                        Attorneys for Defendants Goalz Restaurant Group, LLC; Goalz CD Pooler GA, LLC; Goalz Dairy Denver NC, LLC; Goalz Dairy Ft Pierce FL, LLC; Goalz DH Springs CO, LLC; Goalz DH Georgetown KY 111, LLC; Goalz DH IL

                107, LLC; Goalz DH IL 109, LLC; Goalz DH Slidell LA 112, LLC; Goalz Restaurant Group COWY, LLC; Goalz Restaurant Group FLA, LLC; Goalz Restaurant Group KTY, LLC; Goalz Restaurant Group NCSC, LLC; Shawn Eby

COPY of the foregoing transmitted through CM/ECF this 22 day of April 2020 to:

Anthony W. Austin (aaustin@fclaw.com)
Philip L. Brailsford (pbrailsford@fclaw.com)
FENNEMORE CRAIG, P.C.
2394 East Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Attorney for Plaintiff HIP Lending Group LLC

By: /s/ Ryan J. Lorenz
Ryan J. Lorenz