FENNEMORE CRAIG, P.C.
Anthony W. Austin (No. 025351)
Philip L. Brailsford (No. 032074)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: aaustin@fclaw.com
Email: pbrailsford@fclaw.com

*Attorneys for Plaintiff*
*HIP Lending Group, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| HIP Lending Group, LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>Goalz Restaurant Group, LLC, et al.,<br><br>             Defendants. | No. CV 20-544-PHX-DJH<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR THE APPOINTMENT OF RECEIVER** |

Defendants' *Response to Plaintiff's Motion to Appoint Receiver* is heavy on specious allegations and devoid of any factual basis why a receiver is not appropriate. Defendants argue a receiver is not appropriate for three reasons: (1) Plaintiff's claims are barred by the statute of frauds; (2) Plaintiff's principal has a conflict of interest and therefore cannot objectively handle Defendants' receivership estates; and (3) the traditional factors for evaluating the propriety of receivership do not favor a receivership. Each of these reasons fail as detailed below.

Notably, Defendants utterly fail to address the most basic justifications for the appointment of a receiver—Defendants obtained a $3,000,000.00 loan from Plaintiff; Defendants unequivocally and undisputedly defaulted on the loan; and the terms of the loan permit Plaintiff to obtain a receiver in the event of Defendants' default. Beyond this, the Response fails to provide the Court with a scintilla of evidence that would suggest that a receivership is not appropriate in this circumstance. Accordingly, a receiver should be

appointed as requested.

## I. PLAINTIFF'S CLAIM IS VALID AND NOT BARRED BY THE STATUTE OF FRAUDS

Defendants argue the validity of Plaintiff's claim is in doubt; and therefore, the receivership issue is not ripe. Defendants base their entire argument on a single premise—the loan agreements initially attached to the Verified Complaint as Exhibits B, D, and E are unexecuted copies of the loan agreements.[1]  Dkt. 26 at pp. 2, 6. Such an argument fails based on the record before the Court.

First, Plaintiff provided the Court and Defendants with fully executed copies of the loan agreements within hours of the issue first being raised. *See* Dkt. 27-1 at pp. 26–28, 38; Dkt. 27–2 at pp. 28–30, 40, 44; Dkt. 27-3 at pp. 27–29, 39, 43, 48. These documents were made available to Defendants' counsel *before* Defendants filed their Response (*see* email correspondence attached as **Exhibit 1**). Nevertheless, Defendants continued to assert the documents are unexecuted. Such a contention is baseless and unsupported by the record before the Court. Notably, Defendants' counsel refused to view the executed loan agreements made available by Plaintiff's counsel.[2] Accordingly, Defendants' feigned ignorance to the validity of Plaintiff's claim and the existence of the executed loan agreements fails.

Second, Defendants have not disputed that they received the approximately $3,000,000.00 from Plaintiff as a result of Defendants executing the loan agreements. Defendants also do not dispute that the $3,000,000.00 has not been repaid as required by the loan documents. Again, Defendants' only response is to try and avoid their obligations

---

[1] The loan agreements (Dkts. 27-1, 27-2, and 27-3) on Plaintiff's counsel's system contain electronic signatures. Plaintiff's counsel, after consultation with his IT department, believes that his firm's software scrubbed the signatures from the loan agreements when they were emailed internally. In any event, the executed copies of the loan agreements have been submitted with Plaintiff's Notice of Errata. *See* Dkts. 27-1, 27-2, and 27-3.

[2] The box.com link (*see* Ex. 1) wherein the executed loan agreements were uploaded provides a notice to undersigned counsel indicating who accessed the folder and when the folder was accessed. To date, undersigned counsel has not received any notice that Defendants' counsel accessed the documents.

because of a filing error that was promptly corrected. Defendants did not provide any documentation or declaration contesting the allegations of the receivership application or asserting countervailing facts. As such, the application is factually undisputed.

Accordingly, not only is Plaintiff's claim valid, the Motion for the Appointment of Receiver is undisputed and should be granted.

## II. ARGUMENTS THAT PLAINTIFF'S PRINCIPAL HAS A CONFLICT OF INTEREST ARE WITHOUT MERIT

Defendants' Response leans heavily on unsubstantiated conspiracy theories, unsupported allegations, empty rhetoric, and unfounded speculation as to Plaintiff's motives. Notably, the Response does not provide a single document that supports these conspiracy theories. Defendants' Response did not even provide a declaration attesting that these theories have any basis in fact.

The Court need not provide any evidentiary weight to Defendants' ridiculous, unsupported, and inflammatory allegations. *See generally Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) ("we afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'"); *Espritt v. Saesee*, 2015 WL 5173166, at *5 (E.D. Cal. Sept. 3, 2015) (accord).

Defendants even went so far as to falsely attribute certain exhibits (Dkts. 26-1 and 26-2) to Plaintiff's principal, Mr. Hannay. *See* Mr. Hannay's Declaration attached as **Exhibit 2**. Even if these documents are considered, they have little to no evidentiary support. First, they are unauthenticated documents. Second, they are irrelevant to the issue of whether Defendants have defaulted on the loan such that the provisions of the loan agreement entitling Plaintiff to a receiver are implicated. Defendants fail to provide the Court with any authority that potential equity is a basis to deny a receivership. Finally, the documents do not demonstrate the alleged equity exists. *See* Ex. 2.

The overriding facts, which Defendants ignore or feign ignorance, are: (1) Plaintiff

loaned $3,000,000.00 to Defendants (*see* Dkt. 1 at ¶¶ 10, 13, 16); (2) Defendants granted Plaintiff a security interest in certain assets owned or subsequently acquired by Defendants (*see* Dkt. 1 at ¶¶ 11–18); (3) Defendants defaulted on the loan (*see* Dkt. 1 at ¶¶ 32–36); (4) a contractual remedy in the event of default is to appoint a receiver.  *See* Dkt. 1 at ¶ 34; *see also* Dkt. 27-3 at p. 19, § 9.2.  Nothing in Defendants' Response disputes these facts or any facts set forth in the application for a receivership.  Further, Defendants do not provide this Court with a scintilla of evidence that would provide a factual basis for the Court to deny the application.

Accordingly, Defendants' unsubstantiated arguments regarding Plaintiff's principal's motives are irrelevant and fail.  Plaintiff is contractually entitled to the appointment of a receiver as a result of Defendants' default.  *Id.*

### III. A RECEIVER IS NECESSARY TO PROTECT PLAINTIFF'S INTERESTS IN THE COLLATERAL

Defendants make several references to the current COVID-19 pandemic and conveniently attempt to attribute their financial struggles and inability to pay their obligations to Plaintiff (and others) due to the COVID-19 pandemic.  To be absolutely clear, Defendants' financial woes, inability to manage their affairs, and subsequent default occurred well before the COVID-19 pandemic impacted the United States.  *See* Dkt. 1 at ¶¶ 21–33.  In fact, as early as August 2019, Defendants had already ceased operations in some of its locations.  *Id.* at ¶ 24.  President Trump, however, issued his first "do not travel" warning with regard to COVID-19 on February 29, 2020.[3]  It was not until March 13, 2020, that President Trump declared a national emergency due to COVID-19.[4]

Significantly, Defendants do not dispute that Defendants' assets are in substantial risk of dissipation.  *See* Dkt. 4 at pp. 9–10 and *compare* Dkt. 26.  Defendants do not dispute

---

[3] *See* https://www.usatoday.com/story/travel/2020/02/29/coronavirus-trump-adds-travel-restrictions-italy-south-korea/4914822002/ last visited on April 24, 2020.

[4] *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ last visited on April 24, 2020.

1  that various franchisors began to issue notices of default as early as March 5, 2020 for franchise agreement violations observed on February 25–26, 2020, *before* President Trump declared a national emergency.  *See* Dkt. 1-11 at pp. 2, 8; *see also* Dkt. 1-10 at p. 2.  Moreover, Defendants do not dispute that landlords began threatening to lockout Defendants from various stores as early as February 27, 2020, *before* President Trump issued a do-not-travel warning and before he declared a national emergency, because Defendants failed to pay rent.  *See* Dkt. 1-15; *see also* Dkt. 1-14 at p. 4.  Hence, it is clear that Defendants displayed an inability to manage their assets before COVID-19 impacted the United States.

Defendants further object that the appointment of Mr. Hughes is inappropriate because the Court has not been provided with several pieces of information regarding Mr. Hughes' potential engagement and the receivership order is too comprehensive and detailed.  Neither of these are a basis to oppose the appointment of a receiver or disputes as to the factual and legal basis for a receiver.  If anything, they go to the scope of the receivership and the ultimate receiver.  Further, to the extent this Court has questions for Mr. Hughes regarding his engagement, experience, and ability to perform the role of receiver, Mr. Hughes remains available to provide whatever documentary evidence declaration the Court deems is necessary.

Further, as is typical in the Response, Defendants make unsupported allegations that should be summarily ignored.  Amongst them is the contention that a receiver will "displace lower-paid workers" so that the receiver can obtain preferential treatment and file a bankruptcy proceeding for Defendants.  Defendants' allegation is simply more of the conspiracy theory style claims that are replete in the Response.  A careful reading of the "comprehensive and detailed" receivership order would inform Defendants that the order does not empower the receiver with the power to file a bankruptcy proceeding for Defendants.  That power remains with Defendants and their respective owners and managers as determined by the respective operating agreement.  These sorts of allegations are hollow and should be summarily ignored.

Accordingly, a receiver is necessary to protect Plaintiff's collateral from forfeiture and dissipation.

### IV. CONCLUSION

For the foregoing reasons and those stated in Plaintiff's Motion for the Appointment of Receiver, Plaintiff requests the Court to order the appointment of a receiver.

DATED this 27th day of April, 2020.

                                                FENNEMORE CRAIG, P.C.

                                                By: s/ *Philip L. Brailsford*
                                                          Anthony W. Austin
                                                          Philip L. Brailsford
                                                          *Attorneys for Plaintiff*
                                                          *HIP Lending Group, LLC*